# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| PHILIP STODDARD, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-cv-00201 (ABJ) |
| | ) | |
| MARK CARLIN, *et al.* | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Philip Stoddard brought suit against a number of individuals involved in the denial of his license to practice law in the District of Columbia. This action is plaintiff's fourth lawsuit seeking redress for rejection of an application for bar membership; none of these suits, including their appeals, have been successful. In this case, defendants have moved to dismiss for lack of jurisdiction and for failure to state a claim. Upon consideration of the motions, the opposition, and the entire record of the case, the Court will grant defendants' motions.

## I.      Background

All of plaintiff's claims in this suit stem from his failed attempts to obtain a license to practice law in the District of Columbia. *See* Am. Compl. at 2. Plaintiff alleges that he first applied for membership to the District of Columbia Bar in May 1999, and was notified in October 1999 that he had passed the July 1999 D.C. Bar examination. Am. Compl. ¶ 31. *See also* Findings of Fact, Conclusions of Law and Recommendation of the Committee on

Admissions, *In re Philip James Stoddard*, No. 10-BG-166 (D.C. Ct. App. Feb. 18, 2010) at 2 ("COA Report").[1]

Based on plaintiff's failure to comply with court-ordered child support obligations from 1979–1988, the Committee on Admissions ("COA") declined to certify plaintiff for admission to the D.C. Bar. Am. Compl. ¶¶ 29, 32; COA Report at 2. Following the COA's May 5, 2000 adverse matters notice, plaintiff requested a formal hearing pursuant to D.C. App. R. 46(f). COA Report at 2. Plaintiff subsequently refused to appear and testify before the COA, and indicated that he had no objection to the COA deeming his application to be withdrawn. *Id.*

In November 1999, plaintiff applied for admission to the Florida Bar. *Id.* at 3. He also passed the February 2000 Florida Bar examination. *Id.* The Florida Board of Bar Examiners ("FBBE") declined to certify plaintiff's admission based on character and fitness grounds, and it opened a formal investigation. *Id.* Plaintiff's Florida Bar application became obsolete in November 2002. *Id.* at 3 n.4. Also in 2002, plaintiff, proceeding *pro se*, filed a lawsuit in federal district court against the Supreme Court of Florida and individual justices of the Supreme Court of Florida. *Id.* On March 13, 2003, the federal district court dismissed the suit. *Id.* at 4. Plaintiff appealed, and on October 23, 2003, the U.S. Court of Appeals for the Eleventh Circuit affirmed the dismissal. *Id.* The Eleventh Circuit noted in an unpublished opinion that plaintiff "admitted that his bar application showed a 25-plus-year history of physical and mental illnesses, a complete financial collapse in 1979, a bitter divorce, three hospitalizations for acute psychosis

---

1      In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted). Plaintiff repeatedly cites to the COA report throughout his complaint. *See, e.g.*, Am. Compl. ¶ 135. Therefore, the Court will consider the COA report in evaluating defendants' motions to dismiss, considering the report "incorporated by reference."

in 1978–1980, and a 1996 bankruptcy involving 20 years of financial instability and sporadic employment." *See* COA Report at 4.

Following plaintiff's loss in the Eleventh Circuit, plaintiff reapplied for admission to the Florida Bar in 2004 and the FBBE reopened its character and fitness investigation. *Id*. On September 6, 2006, a week before the FBBE's character and fitness hearing, plaintiff filed another suit in federal district court in Florida against several officials, including the Chief Justice of the Florida Supreme Court. *Id*. at 8. The court dismissed that suit on December 22, 2006 and plaintiff appealed; the Eleventh Circuit affirmed the dismissal. *Id*. On January 3, 2008, plaintiff filed a "petition for writ of habeas corpus" against the Supreme Court of Florida and then Governor of Florida, Charles J. Crist. *Id*. The federal district court dismissed the petition, and on March 11, 2008, it denied plaintiff's motion for reconsideration. Plaintiff did not appeal. *Id*. at 9.

Meanwhile, plaintiff reapplied for admission to the D.C. Bar on May 2, 2006. *Id*. In December 2006, the COA reopened its character and fitness investigation, requesting documents relating to the FBBE's refusal to certify plaintiff's admission to the Florida Bar. *Id*. On March 13, 2007, plaintiff filed a petition of review with the District of Columbia Court of Appeals ("D.C. Court of Appeals"), asking the court to review his bar application file. *Id*. The COA filed a response, noting the multiple character and fitness issues raised by plaintiff's application. *Id*. On May 2, 2007, the D.C. Court of Appeals denied plaintiff's petition. *Id*. The COA proceeded with its investigation, and on August 26, 2008, it notified plaintiff that it was again unwilling to certify him for admission to the D.C. Bar. *Id*. at 10. A formal hearing was held at plaintiff's request on October 14, 2009. *Id*. at 11.

Plaintiff, again proceeding *pro se*, brought the instant action on February 2, 2010 against several defendants: the COA; Mark S. Carlin, chairman of the COA; Alan H. Kent, general counsel of the COA; the D.C. Court of Appeals; three judges of the D.C. Court of Appeals – the Honorable Inez Smith Reid, the Honorable John R. Fisher, and the Honorable William C. Pryor; and plaintiff's former spouse, Lynda A. Ells. *See* Am. Compl. at 7–10. Plaintiff alleges violations of the U.S. Constitution, federal law, and District of Columbia common law, and he seeks compensatory and punitive damages, as well as injunctive relief. *See id*. ¶¶ 45–159.

The COA filed its Findings of Fact, Conclusions of Law and Recommendations with the D.C. Court of Appeals on February 18, 2010, and plaintiff filed a response on February 23, 2010. Am. Compl. ¶ 42. The D.C. Court of Appeals issued an order on March 24, 2010, directing plaintiff to show cause why his bar application should not be denied, and plaintiff filed a timely response. *Id*. On April 26, 2010, the Court granted an order to stay this action pending the outcome of the matter in the D.C. Court of Appeals. *See* Minute Order, April 26, 2010. On May 10, 2010, the D.C. Court of Appeals denied plaintiff's application for admission to the bar. *Id*. ¶ 42. On June 24, 2010, the Court granted plaintiff's unopposed motion to lift the stay in this case and for leave to amend his complaint. *See* Minute Order, June 24, 2010.

Plaintiff's amended complaint alleges violations of his constitutional rights to due process and equal protection; a common law tort of invasion of privacy; violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*.; violations of section 504 of the ADA, 29 U.S.C. § 794; violations of the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq*.; conspiracy to deprive plaintiff of his constitutional rights; and engagement in a common law civil conspiracy. *See* Am. Compl. ¶¶ 45–159.

## II.     Standard of Review

Where the action is brought by a plaintiff proceeding *pro se*, "the court must take particular care to construe plaintiff's filings liberally, for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks v. Fort Myers Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–521 (1972).  While this plaintiff has a law degree and has passed two bar examinations, the Court will apply the *pro se* standard since he is unrepresented in this case.

### A.     Personal Jurisdiction

To defeat a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over each defendant.  *Murphy v. PriceWaterhouseCoopers LLP*, 357 F. Supp. 2d 230, 242 (D.D.C. 2004), citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  "The plaintiff must allege specific acts connecting the defendant with the forum." *In re Papst Licensing GMBH & Co. KG Litigation*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  This inquiry permits the Court to look outside the allegations of the complaint to establish jurisdiction, *Helmer v. Doletskaya*, 290 F. Supp. 2d 61, 65 n.1 (D.D.C. 2003), but any factual discrepancies should be resolved in favor of the plaintiff.  *Crane*, 894 F.2d at 456.  The Court  need not treat all of the plaintiff's jurisdictional allegations as true, however.  *In re Papst Licensing*, 590 F. Supp. 2d at 98, citing *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  "Instead, the court may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.* (internal quotation marks and citation omitted).

## B.     Failure to State a Claim

In evaluating a motion to dismiss under 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citation omitted).   Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

"To survive a [Rule 12(b)(6)] motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id*., quoting Fed. R. Civ. P. 8(a)(2).  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 570, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*.

### III. Analysis

#### A. The Court Lacks Personal Jurisdiction Over Defendant Ells

Plaintiff asserts that his former spouse, defendant Ells, is liable for intentional interference with prospective economic advantage, Am. Compl. ¶¶ 103–109, conspiracy to violate the Fifth Amendment, *id*. ¶¶ 114–125, and civil conspiracy, *id*. ¶¶ 126–127. All of plaintiff's allegations relating to defendant Ells stem from the COA's receipt of what is alleged to be "a materially false, highly defamatory and politically inflammatory letter from Mrs. Lynda Ells purporting that Stoddard, from whom she had been divorced for more than fifteen years, was not to practice law in the District of Columbia," citing his failure to pay "child support obligations during the period 1979–1988." Am. Compl. ¶ 29.

The Court need not wade far into factual merits of plaintiff's claims, as defendant Ells has asserted this Court lacks personal jurisdiction over her. As such, the Court assumes as true that defendant Ells sent two letters to the COA regarding the plaintiff's compliance with his legal and financial obligations. Plaintiff admits that defendant Ells is a resident of Maryland, *see* Am. Compl. ¶ 11, and that "Mrs. Ells' address for service of process" is in Lothian, Maryland. *Id*. Defendant Ells alleges: (1) that both of the letters in question were written and mailed by Ells from Maryland; (2) that Ells does not engage in business in the District of Columbia; (3) that Ells does not contract or supply services to the District of Columbia; (4) that Ells has never had an interest in real property in the District of Columbia; (5) that Ells has never lived or worked in the District of Columbia; and (6) that Ells has never transacted business in the District of Columbia. *See* Def. Ells' Mot. to Dismiss ("Ells' Mot.") at 10–11 n.9. Moreover, Ells asserts that she has lived in Maryland for over thirty years, and that Ells and plaintiff were married and divorced in Maryland. *See* Ells' Affidavit ¶¶ 2–3; Ells' Mot. Ex. 2.

The D.C. long-arm statute, D.C. Code § 13-423, provides in the relevant text that a District of Columbia court may only exercise personal jurisdiction over a person when the claim for relief arises from: (1) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; or (2) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he or she regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. *See* D.C. Code § 13-423(a)(3)–(4).[2]

Because defendant Ells does not regularly do business in this forum, the only potential grounds for jurisdiction over her would be if she caused tortious injury within the District of Columbia, *and* the act or omission that caused the injury also occurred in the District of Columbia. The burden is on plaintiff to establish jurisdiction over each defendant. *See Murphy*, 357 F. Supp. 2d at 242.

---

2       D.C. Code § 13-423 provides:
(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –

     (1) transacting any business in the District of Columbia;
     (2) contracting to supply services in the District of Columbia;
     (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
     (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
     (5) having an interest in, using, or possessing real property in the District of Columbia;
     (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
     (7) marital or parent and child relationship in the District of Columbia . . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

Plaintiff alleges that he was harmed by defendant Ells's letters but he has failed to connect that alleged tort to any act committed by the defendant in the District of Columbia. In a similar situation, the court found that section 13-423(a)(3) does not extend personal jurisdiction to a defendant who simply mailed an allegedly libelous statement from outside the District of Columbia into the forum.

> [T]he libelous article was printed, and the newspapers were mailed, outside of the District of Columbia. The fact that they were mailed into the District of Columbia and caused injury here is not a sufficient basis for jurisdiction under the case law cited above. As no act occurred within the District of Columbia, this Court cannot exercise jurisdiction under D.C. Code § 13-423(a)(3).

*Moncrief v. Lexington Herald-Leader Co.*, 631 F. Supp. 772, 774 (D.D.C. 1985). Thus plaintiff has failed to meet the requirements of establishing personal jurisdiction under section 13-243(a)(3). Given the lack of evidence to support invoking any other provision of the long arm statute, plaintiff has failed to establish that the Court has jurisdiction over defendant Ells, and her motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) will be granted.

### B. Defendants Reid, Fisher, and Pryor Are Shielded by Absolute Immunity

Plaintiff has also sued three judges of the D.C. Court of Appeals – the Honorable Inez Smith Reid, the Honorable John R. Fisher, and the Honorable William C. Pryor. *See* Am. Compl. at 7–10. Because these defendants are being sued for conduct performed in their official judicial capacity, they are shielded by absolute immunity.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967). "Judicial immunity apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error." *Forrester v. White*, 484 U.S.

219, 225 (1988). "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Id*. at 226–27.

The instant situation provides an ideal example of the appropriate application of judicial absolute immunity. The judges of the D.C. Court of Appeals should not feel compelled to certify unsuitable persons to practice law because they fear retribution via litigation for not doing so. Because defendants Reid, Fisher, and Pryor are being sued for a determination made pursuant to their judicial authority, they are shielded from suit by absolute immunity. Accordingly, their motion to dismiss for failure to state a claim will be granted.

### C. The Remaining Defendants Are Shielded by Quasi-Judicial Absolute Immunity

The remaining defendants are the COA itself and the COA's chairman and general counsel. *See* Am. Compl. at 7–10. Because courts have regularly held that bar officials' functions are sufficiently judicial to apply the doctrine of absolute immunity, the Court will dismiss the remaining defendants.

The D.C. Court of Appeals is empowered to establish rules "respecting the examination, qualification, and admission of persons to the member in its bar, and their censure, suspension, and expulsion." D.C. Code § 11-2501(a). Pursuant to this authority, the D.C. Court of Appeals has established three committees to handle these functions: (1) the Board on Professional Responsibility, which oversees the conduct of members already admitted to the bar; (2) the Committee on Unauthorized Practice of Law ("CUPL"), which oversees non-members of the bar who hold themselves out as authorized to practice; and (3) the Committee on Admissions, which determines who may be admitted to the bar. *See Simons v. Bellinger*, 643 F.2d 774, 775 (D.C. Cir. 1980).

The U.S. Court of Appeals for the District of Columbia Circuit has held that members of the CUPL, acting in their official capacity, are entitled to absolute judicial immunity. *See id.* at 777. Plaintiff has failed to persuade the Court that there is any meaningful difference between the instant situation and the circuit court's determination in *Simons*.

Absolute immunity "is defined by the *functions* it protects and not by the person to whom it attaches." *Forrester*, 484 U.S. at 227. "Courts have extended absolute immunity to a wide range of persons playing a role in the judicial process." *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994). These persons include prosecutors, law clerks, probation officers, a court appointed committee monitoring the unauthorized practice of law, a psychiatrist assisting a trial judge, arbiters, and persons performing dispute resolution. *Id.*

> We have distilled the Supreme Court's approach to quasi-judicial immunity into a consideration of three main factors: (1) whether the functions of the official in question are comparable to those of a judge; (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct.

*Id.*, citing *Simons*, 643 F.2d at 778. The circuit court in *Simons* determined that all three elements weighed in favor of granting the members of the CUPL absolute immunity. The same conclusion is warranted here.

Addressing the first element, in a suit against a predecessor to the defendant committee in this suit – the Committee on Admission and Grievances – the district court highlighted the special relationship between judges and the attorneys whom they appoint to assist them in overseeing the bar:

> [T]he Committee acts as a surrogate for those who sit on the bench. Indeed, were it not for the Committee, judges themselves might be forced to engage in the sort of inquiries which the plaintiffs have put in issue. In sum, the Committee members, as a bona fide arm of the Court of Appeals

of the District of Columbia, must almost by definition make decisions
comparable to those of a judge. The near-judicial nature of their work . . .
point strongly to the appropriateness of a grant of absolute immunity.

*Simons*, 643 F.2d at 781. The committee members here are no different than those in *Simons* –

they "serve as an arm of the court and perform a function which traditionally belongs to the

judiciary." *Id.* at 780.

The court in *Simons* focused on the similarities between the CUPL and a prosecutor, and

the court concluded that members of the CUPL – like prosecutors –should be subject to quasi-

judicial absolute immunity. 643 F.2d at 781. Here, the COA's role is even more analogous to

that of a judge. The COA delivers a report to the D.C. Court of Appeals with its

recommendation for a final determination whether the applicant should be admitted to practice

law within the District of Columbia. D.C. App. R. 46(g). "[I]t has been well settled . . . that it

rests exclusively with the court to determine who is qualified to become one of its officers, as an

attorney and counsellor . . . ." *Ex Parte Secombe*, 60 U.S. 9, 13 (1856). "[I]t is the duty of the

court to exercise and regulate [admissions] by a sound and just judicial discretion, whereby the

rights and independence of the bar may be as scrupulously guarded and maintained by the court,

as the rights and dignity of the court itself." *Id*. Thus, defendant COA and its officers are

performing a uniquely judicial function.

Turning to the second element, denying absolute immunity for bar admissions officers

would almost certainly result in repetitious litigation by those candidates aggrieved by the

COA's determinations. As the court noted in *Simons*, "absolute immunity would only be

appropriate in situations where the officials who participate in the process of adjudication are

likely to become defendants in later suits brought by litigants embittered by the outcome in the

original forum." 643 F.2d at 782, citing *Butz*, 438 U.S. at 512. "[C]ontroversies sufficiently

intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus." *Butz*, 438 U.S. at 512. This is exactly what happened in the instant situation. Given that plaintiff has initiated four suits against multiple admissions officials in different states, plaintiff demonstrates first-hand the endless challenges that would ensue if defendants are not entitled to absolute immunity. Therefore, the Court concludes that "the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect." *Wagshal*, 28 F.3d at 1252.

"The final factor considered by the Court in *Butz* was the existence of 'safeguards built into the judicial process' which are sufficient to eliminate the need for private damage actions as a means of curbing unconstitutional conduct." *Simons*, 643 F.2d at 782. Another court in this district has concluded that the bar examination process – as opposed to the character and fitness process in the instant situation – met the requisite safeguards. An applicant whose regrading petition has been denied "may obtain, upon request, finally a review of the regrading petition and the examiner's disposition thereof by *two other members* of the Committee." *Harper v. D.C. Comm. on Admissions*, 375 A.2d 25, 26–27 (D.C. 1977). While there is no statutorily established procedure for petitioning the D.C. Court of Appeals for review of a final determination of the COA denying certification, the D.C. Court of Appeals does accept and consider petitions for review. *Kennedy v. Educ. Testing Serv., Inc.*, 393 A.2d 523, 525 (D.C. 1978). Here, plaintiff sought and received review by the D.C. Court of Appeals regarding the denial of his certification. These safeguards eliminate the need for private suits to ensure constitutional compliance with bar certification. Plaintiff has been provided with "the opportunity to point out the inaccuracies in the bar admissions without the need to bring a civil

damage suit against the individual Committee members." *Powell v. Nigro*, 601 F. Supp. 144, 149 (D.D.C. 1985).

Plaintiff's opposition to defendant's motion to dismiss runs 43 pages. *See* Pl.'s Opp. Throughout the brief, he provides long block quotations, but he fails to explain how they are relevant to the instant situation. As far as the Court can discern, plaintiff's primary argument in opposition to quasi-judicial absolute immunity centers on whether defendants are the "complaining parties." *See* Pl.'s Opp. at 15–16. However, the complaining witness doctrine is wholly inapplicable to the instant situation. The Supreme Court explained in *Malley v. Briggs*, 475 U.S. 335, 340–42 (1986), that police officers seeking an arrest warrant were not entitled to the same absolute immunity that prosecutors are. The Court's conclusion rested on that observation that, at common law, "the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause." *Id*. at 340–41.

Plaintiff's allegation that the COA should be likened to a police officer issuing a complaint fails for a number of reasons. First, defendants did not initiate proceedings against plaintiff, and they certainly did not launch proceedings that could result in the loss of his liberty. Plaintiff sought admission to the D.C. Bar, and submitted an application in pursuit of certification. The COA's determination that plaintiff did not meet the character and fitness standards is not analogous to an officer at common law obtaining an arrest warrant. More importantly, plaintiff fails to demonstrate that defendants' actions were malicious and without probable cause. Plaintiff has been denied bar membership multiple times in this jurisdiction and elsewhere for a host of well-documented reasons.

Finally, the Court notes that there are many similar situations in which courts have held that members of boards with adjudicatory responsibilities are entitled to quasi-judicial absolute immunity. *See, e.g.*, *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 782 (1st Cir. 1990) (quasi-judicial absolute immunity was proper for medical licensing board members); *Ashbrook v. Hoffman*, 617 F.2d 474, 476–77 (7th Cir. 1980) (quasi-judicial absolute immunity was proper for court-appointed commissioners charged with partitioning property in the wake of a divorce). Therefore, because defendants are shielded by absolute immunity, the complaint fails to contain sufficient factual matter that would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Accordingly, defendants' motion to dismiss for failure to state a claim will be granted.

## IV.  Conclusion

After thorough consideration of the pleadings in this case and the relevant authorities, the Court concludes that the D.C. Court of Appeals and the three judges of the D.C. Court of Appeals are entitled to absolute judicial immunity, while the COA, Carlin, and Kent are entitled to quasi-judicial absolute immunity. Therefore, their motion to dismiss for failure to state a claim will be granted. Moreover, plaintiff has failed to plead that this Court can exercise personal jurisdiction over the only defendant not entitled to absolute immunity – plaintiff's former spouse – and therefore defendant Ells' motion to dismiss for lack of personal jurisdiction will also be granted. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: July 29, 2011